[Cite as *State v. Oloye*, 2018-Ohio-3182.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

       Plaintiff-Appellant,                    :

v.                                               :                  No. 17AP-902
                                                                 (C.P.C. No. 17CR-378)
Oluwasegun I. Oloye,                             :

       Defendant-Appellee.                     :                  (REGULAR CALENDAR)

---

D E C I S I O N

Rendered on August 9, 2018

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Valerie Swanson*, for appellant. **Argued:** *Valerie Swanson.*

**On brief:** *Yeura Venters*, Public Defender, and *George M. Schumann*, for appellee. **Argued:** *George M. Schumann.*

---

APPEAL from the Franklin County Court of Common Pleas

TYACK, J.

{¶ 1} The State of Ohio is appealing from the granting of a motion to suppress the evidence. It assigns a single error for our consideration:

> THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANT'S MOTION TO SUPPRESS.

{¶ 2} Oluwasegun I. Oloye was sitting in the passenger seat of a motor vehicle when the vehicle was pulled over by Grove City police officers purportedly because the vehicle had no front license plate but also because the driver of the vehicle had engaged in illegal activity in a local Home Depot store involving the use of cloned credit cards.

{¶ 3} Oloye was removed from the vehicle and placed in a police cruiser where he was held for a significant period of time. A police canine was summoned and the dog

alerted, but a search revealed no illegal or controlled substances. The State of Ohio does not contest the fact that the detention constituted an arrest for purposes of the Fourth Amendment to the United States Constitution.

{¶ 4}   Based on items discovered after the arrest, criminal charges were filed. Counsel for Oloye filed a motion to suppress.

{¶ 5}   An evidentiary hearing was held at the conclusion of which the judge assigned to the case granted the motion to suppress. The State of Ohio then initiated this appeal.

{¶ 6}   No warrant of any kind was involved in the encounter between Oloye and the Grove City police. Therefore, we are guided by long-standing precedent from the Supreme Court of the United States which states that warrantless arrests and seizures are per se unreasonable, subject to a few well-delineated exceptions. *See Katz v. United States*, 389 U.S. 347 (1967).

{¶ 7}   The State of Ohio argues that the applicable exception in Oloye's case is an arrest based on probable cause. The trial court judge assigned to the case was not convinced of the existence of probable cause and therefore sustained the motion to suppress. The trial court made the following findings:

> The Court has had the opportunity to observe the demeanor and credibility of the witnesses. The Court reviewed the DVD exhibit of the stop. The Court's [sic] also reviewed the exhibits and the credit cards.
>
> With regard to the exhibits, the Court will point out a few things. All the cards that I saw had logos on them. I don't know what else was confiscated, but every one of those cards had a logo. I looked at, like, 10 of them, not at each card.
>
> With regard to the backings of the cards, I only saw four in there, not dozens. I saw four backings. The testimony was that the officer, in looking inside the car, saw some of the cards strewn about. I am not sure what all of them were. I am not sure how many were seen in the car, but some were seen in the car.
>
> It wasn't totally clear whether some were at the feet of the defendant or in the passenger seat, but backings were at the feet and two phones, I believe, were at the feet of the defendant. But the phones had receipts, you know. However they were purchased, there were receipts there. I am to look

at it as an objective person looking in. Those are my observations, at least, with regard to the exhibits.

* * *

The observations of the clerk in the Home Depot as it relates to Defendant Sow certainly gave rise to reasonable suspicion of criminal activity under Terry. There was suspicious behavior. The clerk is experienced in the utilization of these credit cards for fraud, the cloning of cards. Our society has changed. Technology has changed.

So, no, it's not like finding drugs in a car where you know it's immediate contraband, but, on the other hand, because of the prevalence in our society of these cards being cloned, certainly a trained officer could think if you find a number of these cards, that it would certainly lead you to believe that there was a reasonable suspicion of criminal activity.

Again, given Mr. Sow's activities inside of Home Depot and the fact the officer was really credible because he could even read Mr. Rutan's cards, although I did see logos, but that's one of the cross-examination questions you wish you never asked.

However, the officer then saw him come out, go to the car. He refused to show ID when it came up on the computer. So given all that and the denominations that he was trying to buy, which didn't work at first, he had to go back, get a lesser item, maybe the light bulbs that were found certainly gave rise to reasonable suspicion of criminal activity.

So the officers had the right to retain that vehicle even without the license plate, although that added to it. They've got a license plate violation. The officers certainly have the right to pull the vehicle over.

They can go up to the windows, talk to both the defendant, who was a passenger, and Mr. Sow, who was the driver. They could make observations in plain view. They're allowed to do that. And I believe they were allowed to detain both of them for a reasonable period of time to investigate. For sure, Mr. Sow.

And I think there probably was reasonable suspicion to detain the defendant here, Oloye - - however you pronounced his name - - to investigate further. He was a passenger in a vehicle

that looked like it had a number of cards strewn about. I don't know what all they were. Certainly, the low standard of reasonable suspicion of criminal activity was met.

They had the right also, because of a traffic stop, to pull Mr. Oloye out of the car. Now, where I don't agree, I don't think they had enough to frisk him at that point. He hadn't made any furtive gestures. You can order a passenger out of a car on a traffic stop, but you can't just frisk them. There has to be a reason you're frisking them, and there wasn't a reason.

But I guess it's irrelevant. They didn't find anything. They didn't pull anything out of his pockets. But at 5 : 03, he's under arrest, in my opinion. He's put in the back of the cruiser, he's not free to go. I believe he's arrested at that time. Even if he's not, let's just say he's being detained for Terry purposes for a reasonable time.

They call the canine, and you're allowed to call the canine as long it doesn't delay the stop, delay the amount of time that it ordinarily takes to do a traffic stop. They didn't find any drugs.

At some point, they had a statement from Mr. Sow that he was involved in illegal credit-card fraud. However, he did not implicate Mr. Oloye. He didn't say anything about Mr. Oloye being involved. The officer at some point - - and, again, maybe it's important, maybe it's not that important. I guess it depends on whether the defendant was under arrest.

And being under arrest is not when the officer says, "You're under arrest." It's when a reasonable objective person would believe they were under arrest. I think putting you into a cruiser you can't get out of puts you under arrest. There may be law that says you're allowed to put a passenger in a cruiser, I am not sure, but at any rate, I believe he was probably under arrest at 5 : 03.

Even if he wasn't - - and that makes a difference because we're going to analyze what the evidence was up to that point. And then probable cause is a higher standard of a reasonable suspicion of criminal activity. So it's got to be certainly - - even for a Terry detention, it has to be more than some suspicion or hunch.

Probable cause to make an arrest requires a probability of substantial chance of criminal activity, not an actual showing

of such activity. It's also an objective standard, taking into account all the facts and circumstances.

Again, the test is probable cause exists if the facts and circumstances known to the officer warrant a prudent or reasonable person in believing that the offense has been committed. So the only offense that the officer believed could have been committed by Mr. Oloye is engaging in credit-card fraud transactions.

The officer admitted that Mr. Oloye was not in the store. Mr. Oloye denied being involved. He was not implicated by the co-defendant. There was no suspicious activity of him acting as a lookout in the parking lot. He wasn't looking around. He wasn't nervous. No testimony like that.

On the other hand, he's experienced in this area, which is a fairly new area of criminal activity. He indicates that he believes that they work in pairs or more than one person, because one person may act as a lookout. I'm a little skeptical of somebody staying in a car versus going inside the place. The risk of being caught is more inside the establishment than it is once you leave.

But at any rate, Columbus versus Russell, which is a Tenth District Court of Appeals case, says that mere presence at the scene of the crime as an alleged accomplice or lookout is not enough to make an arrest on - - in the Russell case, 39 Ohio App. 2d 139, two men were walking together. As they walked together, one man stole a bicycle.

The defendant who was also there - - the co-defendant refused to answer who it was that took the bike. The two individuals were together. They arrested both of them, and the Court said, "Hey, that's not enough."

As much as we may feel that the defendant may have been aware of the fact that one of his friends was about to take a bicycle that did not belong to him and as much as we may deplore that fact, we have to adhere to the requirements of law. And in doing so, this defendant would have to be found not guilty. There's not a basis to arrest somebody unless they're doing something.

So you have Mr. Oloye in the car with some credit cards, gift cards that do have logos, laying about the vehicle, and three

or four backs of cards. You have two iPhones in the vehicle, and you have the activity of Mr. Sow inside the Home Depot. That's all there is as it relates to Mr. Oloye.

There's no evidence about how long he had been in the car. The iPhones were purchased at about 4:00 o'clock. Maybe this all took place around 4:45, 4:50. I am not sure. He could have gotten in the car 24 minutes before or two hours before. He could have been with him all day long. I have a suspicion and a hunch, yeah, he's involved, based on that information.

And in hindsight, he was involved because the credit cards that were found on him did not belong to him. The information that was obtained off the strip indicates that he lied to the officers. We have to look at the information the officer had at the time, not hindsight.

As I did indicate, I did buy six gift cards today. They were on the floorboard of my car. One was out of the bag because I tossed the bag down there. What if my friend gets in the car, goes with me for lunch, we go into a Giant Eagle, we raise suspicion and we get pulled over?

I mean, as the Court said in the Russell case, as much as I deplore this activity, which I do, this is one of my pet peeves, because when you steal information from somebody, it wrecks their lives, it ruins their credit and you get it on these strips. As deplorable as that is, I have to adhere to the law.

Based on all the information, the credibility of the witnesses, reviewing the tape, I don't believe there was probable cause to arrest Mr. Oloye for the crime of credit-card fraud. I do believe there was a reasonable suspicion to detain him for a period of time. I believe he was under arrest no later than 5 : 03, 5 : 03 . 40 [sic].

Even if he was arrested a few minutes later, when they got him out of the car to actually search him, I don't see much more information other than I think they did - - they told differing stories, but we don't know what the differing stories were.

It could be that the driver said, "Hey, yeah, I drove around all day, and I used illegal credit cards." The co-defendant may have said, "I just got in the car 20 minutes ago." If the officer could have given me more facts about what the differences

were, like, yeah, I was with him all day, and we went here and there, that would add in my book.

And I'm not discrediting the officer's testimony that they might work in pairs. I don't see it here as enough. It's a close call; it wasn't a slam dunk. So I don't believe there was probable cause to arrest him.

I would suppress the credit cards that were taken from Mr. Oloye, and whatever subsequently developed at the police station would be fruit of the poisonous tree. Again, maybe the case can be made that Mr. Sow is going to implicate Mr. Oloye.

(Tr. 95-105.)

{¶ 8} We believe the trial court judge acted properly in sustaining the motion to suppress.

{¶ 9} The State of Ohio tries in its brief to reduce the probable cause standard. The State argues that the evidence established "a fair probability that [Oloye] was engaged in a common enterprise of credit-card fraud." (Appellant's brief at 15.) Probable cause requires more than a fair probability. Probable cause requires that the facts establish that it is more likely than not that a defendant is committing or has committed a crime. The standard is not mere possible cause, but probable cause.

{¶ 10} Since the trial court judge's factual findings are fully supported by the evidence presented at the evidentiary hearing on the motion to suppress, and the trial court applied the correct guiding legal principles, the trial court was correct in sustaining the motion to suppress.

{¶ 11} The sole assignment of error is overruled. The judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BRUNNER and HORTON, JJ., concur.

————————